IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2007

## STATE OF TENNESSEE V. GUY MARTIN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-04311    James C. Beasley, Jr., Judge**

_____

**No. W2006-01851-CCA-R3-CD  - Filed July 24, 2007**

_____

Appellant, Guy Martin, was found guilty by a jury of aggravated robbery and intentionally evading arrest in a motor vehicle. As a result, the trial court sentenced him to an effective sentence of nine years. Following the denial of a motion for new trial, Appellant initiated this appeal. On appeal, Appellant argues that the evidence is insufficient to sustain his convictions. As part of his argument that the evidence is insufficient to support the convictions, Appellant challenges the trial court's denial of his motion to suppress the photographic lineup as unduly suggestive. Because the photographic lineup was not unduly suggestive and there was evidence presented from which a rational juror could conclude that Appellant committed aggravated robbery and intentionally evaded arrest in a motor vehicle, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Melanie E. Taylor, Memphis, Tennessee, for the appellant, Guy Martin.

Robert E. Cooper, Jr., Attorney General & Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Pritchard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

<u>Factual Background</u>

In June of 2005, Appellant was indicted by the Shelby County Grand Jury for one count of aggravated robbery and one count of intentionally evading arrest in a motor vehicle.

At trial, the victim, Latasha Vardaman, testified that on March 2, 2005, at approximately 4:00 p.m., she went to her grandmother's apartment at 5166 Tulane in Memphis, Tennessee to pick up her children. As she was in the process of loading her children into the car, she was approached by two African-American males. At that time, the victim's three-year-old daughter was already in the car, and she was in the process of placing her seven-month-old son in the car. The first male ordered her to give him the car keys. The man stated, "Bitch, if you scream, I am going to shoot you, give me the keys for the car." The man pointed a silver gun at the victim. The victim handed over the keys. The victim stated that she tried to get her son out of the car, but that one of the men had already removed him from the car. During the encounter, the victim was terrified and worried about her children. At some point, the victim's daughter managed to get out of the car by herself. Neither of the men were wearing masks, so the victim was able to get a good look at their faces.

Once the children were removed from the car, the men took off in the car, a 1999 burgundy Chevrolet Cavalier. The victim's grandmother called the police, who arrived two or three minutes later.

Several days later, the victim was able to identify Gerald Johnson as one of the perpetrators from a photographic lineup. The victim was later called back to the police station where she identified Appellant in another photographic lineup. The victim stated that she could identify Appellant based on his eyes and the structure of his nose and face. The victim also identified Appellant at trial.

At trial, the victim testified that she initially described Appellant to police as five feet, four inches tall with braids and dark spots on his face. In contrast, the victim's sworn statement to police described Appellant as five feet, seven inches tall and approximately one hundred ninety five pounds with a low hair cut. The victim also admitted that she told police officers that one of the perpetrators took her daughter out of the car when it was, in fact, her son that was removed from the car by one of the men. The victim explained that she got confused because she was shaken up and nervous.

Gerald Johnson, one of the men responsible for the robbery, testified that he saw Appellant at a gas station on the corner of Tulane and Shelby drive on March 2, 2005. Appellant asked Mr. Johnson if he wanted to carjack someone. Mr. Johnson told Appellant he "didn't care," so they ran across the street toward the Tulane Apartments.

According to Mr. Johnson, Appellant started walking toward the victim's car, then ran up to the victim, pointed a gun at her and demanded her keys. Contrary to the victim's testimony, Mr.

Johnson testified that the gun was black, not silver. When Appellant pointed the gun at the victim, Mr. Johnson was standing in front of the car. Appellant asked Mr. Johnson if he wanted to get in the car with him, so Mr. Johnson walked around to the passenger side of the car. When he opened the door to the car, he saw a baby. Appellant told Mr. Johnson to get the baby out of the car. According to Mr. Johnson, he held the door open so that the victim could remove her son from the car. Once the infant was removed from the car, the two men took off. Appellant drove and Mr. Johnson rode in the passenger seat. They drove to Mr. Johnson's neighborhood and Appellant dropped Mr. Johnson off at a friend's house. Mr. Johnson testified that he did not remember being chased by the police while they were in the stolen car. Mr. Johnson was arrested later that afternoon and admitted his involvement in the crime several days later. At that time, Mr. Johnson identified Appellant as the main aggressor in the robbery.

Mr. Johnson testified that at the time of the robbery he was on probation for burglary of a building and that he had served some time in jail for a theft of property charge in 2003. Mr. Johnson stated that he hoped to get a fair outcome on his parole violation hearing in exchange for his testimony against Appellant.

Officer Ellason Flagg of the Memphis Police Department testified that he was on patrol in the Whitehaven, Westwood area of Memphis on March 2, 2005, when he heard a broadcast describing a vehicle that had been involved in a carjacking. The car was described as a burgundy Chevrolet Cavalier with tinted windows and Mississippi tags.

Officer Flagg spotted the car at the corner of Leacrest and Bow Street and initiated pursuit by activating his blue lights and siren in an attempt to stop the car. According to Officer Flagg, the driver of the car sped off at a high rate of speed. Officer Flagg was able to pursue the suspects for two or three minutes, but eventually lost sight of the car. The car was recovered several blocks away by other police officers. The suspects were not in the car when it was recovered.

Officer Flagg could not positively identify Appellant as the driver of the car, but was certain that the car was occupied by two African-American males. When Officer Flagg first saw the car, the driver was traveling at a normal rate of speed through a residential neighborhood. After Officer Flagg initiated a pursuit of the car, the driver sped up, ran several stop signs and refused to stop the car.

Lieutenant Brad Newsom interviewed the victim several days after the incident. He put together a photographic lineup that included Mr. Johnson's picture. After viewing the lineup, the victim identified Mr. Johnson as one of the perpetrators. Lieutenant Newsom interviewed Mr. Johnson, who admitted his involvement in the crime and implicated Appellant as the leader in the commission of the robbery. At that point, Lieutenant Newsom prepared a second photographic lineup that included Appellant. The victim identified Appellant from the lineup.

Officer Antonio Gray was dispatched to 4260 Westmont on March 4, 2005, to arrest Appellant. When he and several other officers arrived at the address, they knocked on the door.

Appellant's mother answered the door, but denied the officers access to the residence. As the officers started to leave, one of them saw someone running through the house toward the back door. The officers apprehended Appellant as he came out the back door of the residence.

Appellant offered proof at trial in his defense. Cleo Williams, Appellant's step-father, testified that he lived at 4260 Westmont with Appellant's mother. According to Mr. Williams, on March 2, 2005, he was preparing a birthday barbeque for his brother, and Appellant was at the house most of the day to help with the preparations. Mr. Williams stated that Appellant left the house on two different occasions for about twenty or twenty-five minutes.

Tabitha Williams, Appellant's sister, stated that she also lived at 4260 Westmont with Appellant. On March 2, 2005, Ms. Williams testified that Appellant took her to pick up her children at approximately 2:00 p.m. After they picked up her children, they went to the store. They returned to the residence at approximately 4:00 p.m.

Martha Martin, Appellant's mother, was called as a rebuttal witness for the State. According to Ms. Martin, she informed an investigator that Appellant was at home all day and that he did not leave the house at all. Ms. Martin testified that she forgot that Appellant had gone to the store with her daughter. Ms. Martin denied that she told the police that Appellant was not home when they came to her house to arrest Appellant. Further, Ms. Martin testified that Appellant was arrested inside the house rather than outside the house.

At the conclusion of the proof, the jury found Appellant guilty of aggravated robbery and intentionally evading arrest in a vehicle. At a sentencing hearing, the trial court sentenced Appellant as a Range I standard offender to nine years for the aggravated robbery conviction and two years for the intentionally evading arrest in a motor vehicle conviction. The trial court ordered the sentences to run concurrently, for a total effective sentence of nine years.

Subsequently, Appellant filed a motion for new trial in which he argued, *inter alia*, that the trial court erred in denying the motion to suppress the photographic lineup and that the evidence was insufficient to support the convictions. The trial court denied the motion, and Appellant sought review in this Court. On appeal, Appellant again challenges the sufficiency of the evidence. As part of his argument that the evidence was insufficient, Appellant again argues that the photographic lineup was unduly suggestive and prejudicial.

*Analysis*

On appeal, Appellant contends that the evidence was insufficient to identify him as the man who robbed the victim and as the individual who was involved in the high-speed chase with Officer Flagg. Specifically, Appellant argues that the "photo spread was so unduly suggestive that it prejudiced him and the end result was a conviction for a crime he did not commit" and "no rational trier of fact could have found him guilty" of the crimes as charged. The State counters that the jury had "ample evidence" of Appellant's identity to support the robbery conviction and "ample

circumstantial evidence" to support the conviction for intentionally evading arrest in a motor vehicle.

While Appellant's brief technically only presents one issue to this Court, we interpret the argument section of Appellant's brief as raising two distinct issues: (1) whether the trial court erred in denying his motion to suppress the photographic lineup; and (2) whether the evidence was sufficient to support the convictions.

Prior to trial, Appellant filed a motion to suppress the photographic lineup. Appellant argued that his picture was the only picture that depicted a man with "braids" in the photographic lineup and, as such, the lineup was unduly suggestive. After a hearing, the trial court determined that the photographic lineup was not improperly suggestive. The court found that the men depicted in the array looked similar enough so as not to make any one individual stand out from the rest, even though Appellant was the only man in the array with what appeared to be short "braids." As a result, the trial court denied Appellant's motion to suppress.

In reviewing a trial court's denial of a motion to suppress, this Court is bound by the trial court's findings of fact unless the evidence preponderates otherwise. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). However, the law as applied to those facts is subject to *de novo* review. *Id.* Appellant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. *State v. Odom*, 928 S.W.2d 18, 22-23 (Tenn. 1996).

*Out-of-Court Identifications*

Out-of-court eyewitness identifications as well as in-court identifications may be challenged on constitutional grounds. A defendant's right to due process is violated if, under the totality of the circumstances, "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. U.S.*, 390 U.S. 377, 384 (1968); *Stovall v. Denno*, 388 U.S. 293, 302 (1967); *see also State v. Strickland*, 885 S.W.2d 85, 88 (Tenn. Crim. App. 1993). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). Examples of impermissibly suggestive identification procedures include:

> That all in the lineup but the suspect were known to the identifying witness, that the other participants in a lineup were grossly dissimilar in appearance to the suspect, that only the suspect was required to wear distinctive clothing which the culprit allegedly wore, that the witness is told by the police that they have caught the culprit after which the defendant is brought before the witness alone or is viewed in jail, that the suspect is pointed out before or during a lineup, and that the participants in the lineup are asked to try on an article of clothing which fits only the suspect.

*United States v. Wade*, 388 U.S. 218, 233 (1967) (footnotes omitted).

Although an identification procedure might be unnecessarily suggestive, the ensuing identifications may be admissible at trial if the identification was nonetheless reliable. *Neil*, 409 U.S. at 199-201. The factors to be considered in determining the reliability of the identification include:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* at 199; *see State v. Edwards*, 868 S.W.2d 682, 695 (Tenn. Crim. App. 1993).

In this case, we agree with the trial court that the photographic lineup was not unduly suggestive. The photographic array depicted six African-American males of similar age with similar facial characteristics, hair color and hair length. The hairstyles of the men in the photographic array were similar enough that no one man stood out merely because of a distinctive hairstyle. In addition, the victim testified at trial that she identified Appellant from the lineup based on his eyes in the photograph, not his hairstyle. Moreover, even if the lineup had been suggestive, we find the victim's identification of Appellant to be nonetheless reliable. The victim had plenty of time to view Appellant during the robbery, Appellant's face was unmasked, and the victim had no idea that Mr. Johnson had already implicated Appellant in the crime at the time that she easily identified him from the photographic lineup. Under these circumstances, we find the victim's identification of Appellant reliable. Appellant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Moving next to our analysis of the sufficiency of the evidence, we recognize that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the

trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *Odom*, 928 S.W.2d at 23.

Appellant was convicted of aggravated robbery. Pursuant to T.C.A. § 39-13-401, robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Aggravated robbery is robbery that is "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402.

At the outset, we acknowledge that it is well-settled that the identification of a defendant as the perpetrator of the crime is a question of fact for the jury to determine. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Viewing the evidence in a light most favorable to the State, the victim made a positive identification of Mr. Johnson from a photographic lineup at the police station. Then, after the police interviewed Mr. Johnson, he admitted his involvement in the robbery and implicated Appellant as the second individual involved in the robbery. At that point, the victim was able to identify Appellant from a photographic lineup. The victim again positively identified Appellant at trial and testified that during the encounter, she had approximately two minutes to observe Appellant and Mr. Johnson and that neither man was wearing a mask. We determine that the proof offered at trial was more than sufficient to support Appellant's conviction for aggravated robbery. Appellant is not entitled to relief on this issue.

Appellant was also convicted of intentionally evading arrest in a motor vehicle. Our code makes it "unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." T.C.A. § 39-16-603(b)(1).

The evidence presented at trial indicated that Appellant was the driver of the car stolen from the victim. Both the victim and Mr. Johnson testified that Appellant got into the driver's seat of the car and sped away from the scene of the robbery. The victim described her car to police within minutes of the robbery. At that time, a call was placed over the radio for police to be on the lookout for the victim's car. Officer Flagg testified that he encountered the vehicle that matched the description of the victim's car and was able to see that there were two African-American men in the car. Officer Flagg activated his blue lights and sirens to signal to the car to pull over. At the time he encountered the car, it was being driven normally, but it accelerated as soon as he turned on his lights and siren. Officer Flagg pursued the car, but eventually lost sight of the car. At trial, Officer Flagg stated that he could not say with certainty that Appellant was the driver of the car. Of course, a criminal offense may be established exclusively by circumstantial evidence. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987); *State v. Jones*, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995). However, the trier of fact must be able to "determine from the proof that all other reasonable theories except that of guilt are excluded." *Jones*, 901 S.W.2d at 396; *see also, e.g., Tharpe*, 726 S.W.2d at 900. The evidence herein, while circumstantial, was sufficient enough for the jury to infer that

Appellant was still driving the car after it left the scene of the robbery and evaded Officer Flagg when he attempted to stop the car. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE